UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NICHOLAS JOHN BAILEY, #970872,      Case No. 2:22-cv-46

    Plaintiff,     Hon. Paul L. Maloney
    U.S. District Judge

v.

ERICA HUSS, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

## I.    Introduction

This Report and Recommendation (R&R) addresses the exhaustion-based motions for summary judgment filed by Defendant Unknown Bourdeau (ECF No. 14) and Defendants Unknown Hares and Erica Huss (ECF No. 23).

Plaintiff — state prisoner Nicholas John Bailey — filed suit pursuant to 42 U.S.C. § 1983 on March 2, 2022. In his unverified complaint, Bailey asserted that while he was confined at the Marquette Branch Prison (MBP) in Marquette, Michigan, four MBP employees[1] acted with deliberate indifference to his serious medical needs by denying him mental health treatment. (ECF No. 1, PageID.4.) More specifically, Bailey said that he suffers from hallucinations, paranoia, and dissociative identity disorder, but that MBP employees would not provide him with

---

[1] Namely, Warden Erica Huss, Unknown Harris, Unknown Bourdeau (named Bailey's complaint as "Unknown Beaudreau"), and Unknown Hares. (ECF No. 1, PageID.2.)

treatment because of his drug history. (*Id.*) Instead, Bailey said that MBP Warden kept him in segregation for an inordinate amount of time. (*Id.*)

Defendants Hares, Huss, and Boudreau now move for summary judgment, asserting that Bailey did not properly exhaust his administrative remedies against them. (ECF Nos. 14, 23.) More specifically, Defendant Boudreau argues that the only grievance that Bailey filed against Boudreau was rejected as vague at all three steps of the grievance process, and therefore did not exhaust any of Bailey's claims. (ECF No. 14, PageID.103-104.) Defendants Hares and Huss argue that Bailey did not file any grievances against them. (ECF No. 24, PageID.153.) Bailey did not respond to Defendants' motions.[2]

The undersigned respectfully recommends that the Court deny the motion for summary judgment filed by Defendant Boudreau (ECF No. 14) and grant the motion for summary judgment filed by Defendants Hares and Huss (ECF No. 23). There are genuine issues of material fact bearing on whether the Michigan Department of Corrections (MDOC) waived the procedural defect in Bailey's grievance concerning his claims against Defendant Boudreau, and therefore whether the grievance exhausted Bailey's claims. There are no genuine issues of material fact as to whether

---

[2] The last communication that this Court received from Bailey was a letter postmarked October 11, 2022. (ECF No. 32.) In this letter, Bailey expresses confusion as to the status of this lawsuit, and at one point states: "Why was I put in mediation then taken of [sic] for saying I failed to adhere to the administrative remedies? Which I got both Step 3 grievances." (*Id.*, PageID.220.) In response, the Clerk of Courts mailed Bailey a docket sheet.

Bailey pursued additional relevant grievances against Defendants Hares or Huss through Step III of the grievance process; the record reflects that he did not.

## II. Factual Allegations

In Bailey's two-page statement of his claim, he says that his mental health team – including Defendant Hares, Harris, and Boudreau – has been denying him therapeutic treatment for his mental illness. (ECF No. 1, PageID.4.) According to Bailey, he has a Major Mental Disorder (MMD), which leads him to experience auditory and visual hallucinations, paranoia, multiple personalities, and bouts of extreme anger. (*Id.*) Bailey says that although he has communicated his symptoms to his mental health team, they continue to deny him treatment based on their belief that he is lying. Bailey says that the team members believe him to be lying based on his history of drug use. (*Id.*)

Additionally, Bailey alleges that MBP Warden Huss is keeping him in administrative segregation for an extraordinary length of time (exceeding eighty days) despite his MMD. According to Bailey, Defendants are keeping him in segregation while awaiting a placement in the Segregation Therapeutic Anger Reduction Treatment Program — a program that never has openings. (*Id.*)

Bailey says that Defendants' failure to provide him with mental health treatment and decision to keep him in administrative segregation for an extraordinary length of time have led him to the "brink of a mental health collapse." (*Id.*) Bailey attached two grievances to his complaint: grievance MBP-21-11-1532-12B3, complaining that Boudreau and Harris were disregarding his mental health

3

needs, (ECF No. 1-1, PageID.10-15), and grievance MBP-21-11-1552-22B, complaining that he was being held in administrative segregation for an inordinate amount of time (*id.*, PageID.16-22).

Bailey seeks monetary damages and injunctive relief in the form of an order that the MDOC provide him with mental health treatment and an off-site psychological evaluation. (*Id.*, PageID.6.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

**IV.    Exhaustion**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion

"is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing

grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative

8

remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

9

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## V.     Analysis

As set forth above, Bailey provided the Court with two grievances along with his complaint: grievance MBP-21-11-1532-12B3 and grievance MBP-21-11-1552-22B. (ECF No. 1-1, PageID.10-22.)  Though he did not file briefs in opposition to Defendants' motions for summary judgment, it is apparent that Bailey believes these grievances exhausted his administrative remedies.

With respect to MBP-21-11-1532-12B3, Defendants assert that the grievance only pertained to Defendants Harris and Boudreau (ECF No. 24, PageID.153), and that the grievance was rejected at all three steps of the grievance process (ECF No. 14, PageID.104).  Bailey's grievance MBP-21-11-1532-12B3, and the Step I response thereto are shown below.

---

[4]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

RECEIVED NOV 24 2021

4835-4247 10/94
CSJ-247A

Date Received at Step I: 11/24/2021 Grievance Office Marquette Branch Prison
Grievance Identifier: MBP 21 11 10 1532 12 BB

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Nicholas Bailey | 970872 | MBP | D-1-8 | 11-23-21 | 11-23-21 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. On 11-23-21 approx. 8am-10am I seen Buddoro (Phyc Doctor), and I was talking about my Mental Health Issues I have sent 2 kites prior about.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On above time and Date I talked 2 the phyc & The Phyc Doctor about my Meds (Effexer) Being raised and I was trying 2 talk 2 the Doctor about me Hearing voices & Impulsiveness & why I have Been Getting so mad & agressive when I am around others. I had Harris on the side of the Doctor shaking his head when I was trying 2 Bring up these other Matters that I have 2 kites in the system regarding these issues.

How can Harris be helping me get Better when I am trying 2 Bring up my Mental Health Issues & Them getting put on the Back Burner & get told 2 wait till I go 2 7Block "Start Program" where I will be wait-ing another 2-5 months after I've already Done 1 month & 7 Days. I feel that the only way 2 get these phyc's help is 2 Bug out.

Grievant's Signature

RESPONSE (Grievant Interviewed?) ☐ Yes ☒ No If No, give explanation. If resolved, explain resolution.)

(ECF No. 14-1, PageID.114.)

11

| Grievance Number: | MBP21110153212B3 |
| --- | --- |
| Prisoner Name: | Bailey |
| Prisoner Number: | 970872 |

| Prisoner | X | was | | was NOT interviewed. GIVE REASON: | |
| --- | --- | --- | --- | --- | --- |

**SUMMARY OF COMPLAINT:**

It unclear what inmate Bailey is reporting and it is difficult to find a problem/concern being clearly stated.

**INVESTIGATION INFORMATION**

Inmate Bailey clearly wrote on the grievance, that his prior attempt to resolve the grievance happened on 11/23/2021 and that he wrote two KITES related to his problem. However, his most recent KITEs related to wanting to see the OPT provider which happened on 11/23/2021 and the other KITE is not related to anything stated in this grievance. This grievance then involves content regarding medication, case manager behaviors, case manager motivations and waiting for the START program. After reading through his grievance multiple times, I am unable to gain a clear understanding of the problem that he is grieving. His presentation has been consistent across numerous interactions, assessments and by numerous involved staff. His diagnosis has remained intact and was addressed through the differential process of diagnosis per Mental Health Best Practices. The inmate is subject to ongoing evaluation. His case manager and OPT provider involved in his treatment is highly qualified to provide the inmate with appropriate diagnosis and treatment based on presenting symptoms. Symptoms have been appropriately accounted for under his current diagnosis. Per policy he will continue to be evaluated and diagnosis reviewed as well as support treatment plan through inmates MDOC stay.

**APPLICABLE POLICY, PROCEDURE, ETC.**

Inmate is being followed by mental health in accordance to PD 04.06.180, PD 04.06.183, 05.01.120

**SUMMARY**

Upon further review of Grievance 21110153212B3, please submit a response for rejection as *vague* in accordance with PD 03.02.130 section G. Mental health services is performing on-going evaluation and assessment of his circumstances as appropriate.

(*Id.*, PageID.115.)

As an initial matter, the undersigned agrees that the grievance pertains only to Defendants Boudreau and Harris ("the [psych] and [psych] doctor"). Accordingly, grievance MBP-21-11-1532-12B3 did not exhaust Bailey's claims against Defendants Huss or Hares. But the undersigned must take a closer look at the grievance to determine whether it exhausted Bailey's claims against Defendant Boudreau.

12

The Step I response to grievance MBP-21-11-1532-12B3 reflects that the grievance was initially rejected as vague. With the reference to earlier kites,[5] medication, treatment programs, and more, the Step I respondent was unable to zero in on the particular issue that Bailey was grieving. That rejection appears to be proper — Bailey's Step I grievance was not the pinnacle of clarity. The undersigned therefore turns to the Step II appeal and response.

Bailey's Step II appeal to grievance MBP-21-11-1532-12B3 reads as follows:

> My Step 1 response is manipulating my Step 1 grievance by saying he "doesn't have a clear understanding of my issues because there is multiple issues" is completely incorrect because there's only one issue which is the fact that Harris, who is not a [psychiatrist] or [psychologist] tells me I am lying when I tell him what I am going through mentally and then [Boudreau] listens to him and does nothing to [illegible] to me and my medical needs.

(ECF No. 14-1, PageID.113.) The Step II response is shown below.

> **STEP II — Response**
>
> A review of your Step II appeal has been completed. It is noted that your grievance was rejected at Step I because it is considered vague. Grievances need to be clear and concise, as to who, what, when, where, why and how. You have brought forth no information which would indicate that MBP staff has failed to follow policy and procedure. QMHP Green has evaluated your unclear claims at step I and at his direction was rejected as vague. Your Step II appeal does not provide any further clarification. Any additional issues will not be addressed during the Step II appeal in accordance with PD-03.02.130 *Prisoner Parolee Grievances*. The Step I grievance was properly rejected by the Grievance Coordinator as vague. Appeal denied.
>
> Erica Huss, Warden
> Respondent's Name (Print)    Respondent's Signature    Date 12/14/2021
> Date Received by Step II Respondent: 12/14/2021
> Date Returned to Grievant: 12/16/2021

(*Id.*, PageID.111.)

Here, the Step II respondent agreed that Bailey's grievance was vague and determined that the Step II appeal did not provide any clarity as to Bailey's

---

5   A "kite" is a written communication that a prisoner sends to prison staff, including health care staff.

13

complaints. The Step II respondent therefore upheld the Step I rejection of Bailey's grievance. Again, this appears to be an appropriate response. The undersigned therefore turns to the Step III appeal and response; this is where the exhaustion issue takes a turn with respect to Bailey's claims against Boudreau.

In his Step III appeal, Bailey stated the following:

> They used the Step I grievance saying its [too] vague. I don't know how it's vague when it is clear as day that my grievance is about the fact that I am requesting mental health treatment beyond my current treatment because my mental illness is getting worse which being in segregation 54+ days and Harris who is part of my mental health treatment team and [he] acts like I'm lying to him about my problems & he's not qualified to do so and then he goes to my mental health [doctor] and influences him into believing I'm lying but to what benefit.

(*Id.*, PageID.112.) The Step III response is shown below.

**Step III Grievance Response**

NICHOLAS BAILEY      970872
MBP    21111532

Grievant alleges Mental Health did not appropriately address his concerns.

All documents provided have been reviewed. Step I and Step II responses are upheld at the Step III appeal. In regards to your claim, after reviewing your Electronic Medical Record, your claim(s) cannot be substantiated. Your mental health concerns are being addressed.

Grievance appeal denied.

Response of Bureau of Health Care Services     Date: 1/13/2022

Approved: _K. Nader, MA, LLP_     Date: 1/13/22

*RD Russell*
Richard D. Russell  Manager, Grievance Section Office of Legal Affairs

MAILED JAN 2 6 2022
Date Mailed

14

Although the Step III respondent to grievance MBP-21-11-1532-12B3 stated that the Step I and Step II responses were upheld, the respondent went on to say that he had reviewed Bailey's Electronic Medical Record, and that Bailey's claims could not be substantiated as his "mental health concerns [were] being addressed." In the opinion of the undersigned, this appears to be a denial of Bailey's grievance on its merits rather than a rejection, especially considering that Bailey's Step III appeal clarified that he was complaining about inadequate mental health care.

As noted above, the PLRA mandates proper exhaustion of the MDOC's grievance procedure, meaning that a prisoner's grievance must comply with the requirements set forth in the MDOC's policy. *Jones*, 549 U.S. at 218-19. But the MDOC waives the argument that a prisoner failed to properly exhaust when it considers the prisoner's grievance on its merits despite a procedural defect. *Reed-Bey*, 603 F.3d at 325.

Bailey's Step III Grievance Report, shown below, seems to confirm that grievance MBP-21-11-1532-12B3 was considered on its merits and denied, rather than rejected, at Step III of the grievance process.

| | | **MDOC Prisoner Step III Grievance Report** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1/1/2016 to Present | | | | | | | | |
| **Prisoner #:** 970872 | | **Last Name:** Bailey | | | | **First Name:** Nicholas | | | | |
| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
| 12/27/2021 | MBP-21-11-1532-12B3 | 12B3 | 18 | 11/24/2021 | ☐ | ☐ | ☑ | ☐ | ☑ | 1/26/2022 |
| Notes: | | | | | | | | | | |
| 4/27/2020 | AMF-20-03-0488-12E3 | 12E3 | 2 | 3/17/2020 | ☐ | ☐ | ☑ | ☐ | ☑ | 5/18/2020 |
| Notes: | | | | | | | | | | |
| 11/2/2017 | RMI-17-10-2102-28I | 28I | 19 | 10/5/2017 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/27/2017 |
| Notes: | | | | | | | | | | |

(*Id.*, PageID.108.) When the Step III response to grievance MBP-21-11-1532-12B3 was logged in the system, it was not logged as a rejection, but rather a denial. In the opinion of the undersigned, taking the Step III appeal, response, and Grievance Report together, a reasonable juror could determine that the Step III respondent considered grievance MBP-21-11-1532-12B3 on its merits, thereby waiving the argument that Bailey failed to exhaust his claims because his grievance was vague. In other words, the undersigned finds that there is a genuine issue of material fact as to whether Bailey exhausted his claims against Defendant Boudreau through grievance MBP-21-11-1532-12B3. The undersigned therefore recommends that the Court deny Defendant Boudreau's motion for summary judgment.

The undersigned now turns to grievance MBP-21-11-1552-22B. Defendants Huss and Hares make no mention of this grievance in moving for summary judgment. Instead, they focus on the fact that grievance MBP-21-11-1532-12B3 is the only grievance reflected on Bailey's Step III Grievance Report, and therefore the only grievance that Bailey appealed through Step III during the relevant timeframe,

16

and that it does not set forth claims against them. (ECF No. 24, PageID.154.) As mentioned above, Bailey did not respond to Defendants motions for summary judgment. And the attachment to Bailey's complaint, which includes the Step I grievance, Step I response, Step II appeal, Step II response, and Step III appeal for grievance MBP-21-11-1552-22B, indicate only that Bailey submitted his Step I grievance and Step II appeal, and that he prepared a Step III appeal. Bailey did not provide a Step III response or other evidence that he actually submitted his Step III appeal, nor did he state that he submitted his appeal in a verified writing pursuant to 28 U.S.C. § 1746.[6] As such, the Step III Grievance Report reflecting that grievance MBP-21-11-1532-12B3 was the only grievance appealed to Step III of the process during the relevant time is sufficient to establish that there are no genuine issues of material fact, and that Bailey did not properly exhaust his claims against Defendants Hares or Huss before filing suit. The undersigned therefore recommends that the Court grant Defendants Hares and Huss summary judgment and dismiss them from the case.

## VI.   Recommendation

The undersigned respectfully recommends that the Court deny the motion for summary judgment filed by Defendant Boudreau (ECF No. 14) and grant the motion for summary judgment filed by Defendants Hares and Huss (ECF No. 23). There

---

[6]   The most that Bailey provided was the October 14, 2022 letter to the Court which stated "I got both Step 3 grievances." (ECF No. 32, PageID.220.) This statement was unverified and is simply insufficient to create a genuine issue of material fact.

are genuine issues of material fact bearing on whether the MDOC waived the procedural defect in Bailey's grievance MBP-21-11-1532-12B3, and therefore whether the grievance exhausted Bailey's claims against Boudreau.  There are no genuine issues of material fact as to whether Bailey pursued additional relevant grievances, such as grievance MBP-21-11-1552-22B, against Defendants Hares or Huss through Step III of the grievance process; the record reflects that he did not.

If the Court accepts this recommendation, Defendants Huss and Hares will be dismissed from this case.  Bailey's claims against Defendants Boudreau and Harris will remain.

Dated:   December 16, 2022                              /s/ *Maarten Vermaat*
                                                                                             MAARTEN VERMAAT
                                                                                            U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).