UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NICHOLAS JOHN BAILEY, #970872,                    Case No. 2:22-cv-46

            Plaintiff,                                         Hon. Paul L. Maloney
                                                   U.S. District Judge

    v.

UNKNOWN HARRIS and
UNKNOWN BEAUDREAU,

            Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motions for summary judgment.  (ECF Nos. 55, 56.)

Plaintiff — state prisoner Nicholas John Bailey — filed suit pursuant to 28 U.S.C. § 1983 on March 2, 2022.  In his complaint, Bailey asserted that while he was incarcerated at the Marquette Branch Prison (MBP) in Marquette, Michigan, mental health staff violated his Eighth Amendment rights by acting with deliberate indifference to his serious mental health needs.  (ECF No. 1, PageID.4-5.)  At this stage of the case, only Bailey's deliberate indifference claims against Qualified Mental Health Provider (QMHP) Larry Harris and Nurse Practitioner (NP) Andrew Boudreau for ignoring his complaints of auditory hallucinations, and against QMHP Harris for keeping him in segregation for an inordinate amount of time remain.  (ECF No. 34, PageID.241 (R. & R.); ECF No. 42, PageID.273-274 (Order Adopting).)

Defendants Harris and Boudreau now move for summary judgment. (ECF Nos. 55, 56.) Defendants contend that there are no genuine issues of material fact, and that Bailey's mental health records demonstrate that he was receiving continuous mental health care at MBP. Defendants contend that they are entitled to judgment (1) because Bailey provides no evidence that the mental health care was woefully inadequate, and (2) because the records reflect that Defendants did not deliberately disregard Bailey's mental health concerns. (ECF No. 55, PageID.314-316; ECF No. 57, PageID.383-393.) Defendant Harris further avers that he had no role in Bailey's placement in administrative segregation. (ECF No. 57, PageID.390-391.) And he argues that he is entitled to qualified immunity in his personal capacity and sovereign immunity in his official capacity. (*Id.*, PageID.393-394.)

In response, Bailey incorrectly posits that Defendants' present motions are duplicative of their prior, exhaustion-based summary judgment motions, and that this Court has already ruled that genuine issues of material fact exist as to his deliberate indifference claims.[1] (ECF No. 68, PageID.543-546.) He also incorrectly avers that Defendants' motions were untimely or otherwise improper. (*Id.*, PageID.546-550.) Bailey then focuses the remainder of his response on whether Defendants are state actors such that they are eligible for qualified immunity. (*Id.*, PageID.553-555.) Perhaps tellingly, Bailey spends next to no time discussing the merits of his deliberate indifference claims.

---

[1] The Court already addressed this contention in its September 25, 2023, order denying Bailey's motion to strike. (ECF No, 66, PageID.526-527.)

The undersigned now respectfully recommends that the Court grant Defendants' motions for summary judgment. In the undersigned's opinion, there are no genuine issues of material fact, and Bailey's mental health records reflect that Bailey was provided continuous care, not that he was met with deliberate indifference to his serious mental health needs. Furthermore, the evidence on the record establishes that Defendant Harris had no personal involvement in Bailey's assignment to administrative segregation.

## II.    Relevant Factual Allegations

Bailey's factual allegations span only four paragraphs. (ECF No. 1, PageID.4-5.) Bailey alleges that his mental health team — including Defendants Harris and Boudreau — "prejudiced" him by denying him treatment for his mental illness. (*Id.*, PageID.4.) More specifically, Bailey says that he suffers from a Major Mental Disorder, and that he has expressed to Defendants that he has been hearing voices and experiencing paranoia, hallucinations, and multiple personalities. (*Id.*) But Bailey says that Defendants do not believe him on account of his drug history. Bailey alleges that Defendants' disbelief has led his mental health to "collapse." (*Id.*)

In addition to disbelieving Bailey's symptoms, Bailey complains that Defendant Harris has kept him in segregation for an excessive amount of time. Bailey says that inmates with mental illnesses should only be kept in segregation for four to seven days; Defendant Harris kept Bailey in segregation for more than ninety days. (*Id.*)

### III.    Relevant Mental Health Records

The first of Bailey's mental health records from MBP is dated July 21, 2021. (ECF No. 57-5, PageID.423.)    That record is a progress note generated by NP Boudreau, who noted that Bailey had recently been transferred from the Baraga Correctional Facility.  (*Id.*)  At the time, Bailey had diagnoses of generalized anxiety disorder, major depressive disorder, and unspecified personality disorder.  (*Id.*, PageID.424.)  Boudreau continued Bailey's prescription for Trazodone and increased his prescription for Prozac.  (*Id.*, PageID.423-424.)

QMHP Harris began visiting Bailey in segregation soon after.  (*Id.*, PageID.425.)  On August 2, 2021, Harris noted that Bailey was behaving normally, and was not displaying any symptoms of a major mental illness.  Harris noted that Bailey was placed in segregation after he was involved in a fight.  (*Id.*)

On August 30, 2021, a non-defendant provider visited Bailey in segregation. (*Id.*, PageID.426.)    Bailey reported that he was sleeping poorly, but that his medications were working okay.  (*Id.*)

When QMHP Harris next visited Bailey on September 9, 2021, Bailey expressed his desire to change his medication.  (*Id.*, PageID.427.)  But Bailey did not express any other mental health concerns.  And Harris noted that Bailey was not displaying any unusual moods or behaviors.  (*Id.*)

On September 17, 2021, NP Boudreau visited Bailey to review his current medications and treatment.  (*Id.*, PageID.428.)  Bailey reported that he was feeling depressed and was not sleeping well but denied any thoughts of self-harm.  Bailey

informed Boudreau that he was taking Effexor and Remeron prior to his incarceration.  (*Id.*)  And Bailey expressed his desire to join the START Program.[2] Boudreau diagnosed Bailey with generalized anxiety disorder and major depressive disorder, discontinued his Trazodone and Prozac, and prescribed him with Effexor and Remeron with a note to assess his response to the medication on October 6, 2021. (*Id.*, PageID.429.)

On September 22, 2021, QMHP Harris visited Bailey and noted that he appeared normal.  (*Id.*, PageID.431.)  Bailey did not report additional mental health concerns at the time.  (*Id.*)

On October 4, 2021, Bailey requested an increase in his mental health medication (Effexor).  (ECF No. 55-1, PageID.318.)  QMHP Harris noted that Bailey had an appointment with his provider the week of October 18, 2021, and that the matter could be discussed during that appointment.  (*Id.*)

---

[2]    According to MDOC Director's Office Memorandum (DOM) 2021-17, effective January 1, 2021, Start Units are general population housing units that serve as "an alternative placement for eligible prisoners who would otherwise be classified to Administrative Segregation."  MDOC DOM 2021-17.  Start Units provide more structure than traditional general population housing units, with prisoners "mov[ing] through progressive levels as the prisoner demonstrates positive behavior and program participation with the goal of reintegrating them back into a traditional general population setting. . . ."  *Id.*  Among the "target prisoner population groups for placement in a Start Unit" are "prisoners who have been diagnosed with serious mental illness, as defined by Mental Health Services policy, procedure and protocol, whose disruptive behavior would warrant reclassification to administrative segregation."  *Id.*

On October 11, 2021, Bailey requested "substance abuse treatment available in his home community." (*Id.*, PageID.319.)  Harris noted that Bailey and Harris could discuss Bailey's specific needs during their "next monthly contact." (*Id.*)

QMHP Harris then visited Bailey in segregation on October 20, 2021.  (ECF No. 57-5, PageID.432.)   At the time, Harris noted that Bailey had a typical appearance, and a well-maintained cell.  There was no evidence of psychotic process or depressed mood.  Nor was there any unusual behavior, or indication that Bailey was suicidal.  (*Id.*)   Harris additionally noted that Bailey had been placed in segregation after participating in his third fight since his transfer to MBP in July of 2021.  During this visit, Harris and Bailey briefly discussed the START program. (*Id.*)

Harris visited Bailey again on October 22, 2021.  (*Id.*, PageID.433.)   Once again, everything appeared normal with Bailey.  Bailey reported that his medications were working fine.  He did not report any mental health concerns.  Harris noted that Bailey was managing his conduct and adhering to the rules in administrative segregation.  (*Id.*)

On October 28, 2021, Harris visited Bailey again.  (*Id.*, PageID.434.)  Harris noted that Bailey appeared normal, and there was "no report of or current evidence for symptoms related to mental illness."  Harris gave Bailey a skill sheet regarding acceptance skills and noted that Bailey was managing his illness and current placement.  (*Id.*)

This pattern continued.  Bailey's records demonstrate that a non-defendant mental health provider visited Bailey on November 4, 2021.  (*Id.*, PageID.435.)

QMHP Harris then visited Bailey on November 12, 2021, November 18, 2021, November 23, 2021. (*Id.*, PageID.436-438.) There were no notable changes during these appointments, with Bailey displaying normal behavior and reporting no additional mental health concerns. (*Id.*)

On December 10, 2021, Bailey requested to see his mental health care provider because he was hearing voices and feeling impulsive. (ECF No. 55-1, PageID.331.) Harris noted that Bailey was scheduled to see his provider on January 17, 2022. Until then, Harris noted that he would monitor Bailey's condition during his weekly rounds. (*Id.*)

On December 13, 2021, Bailey asked to be signed up for the Medications for Addiction Treatment Program. (*Id.*, PageID.332.) Harris informed Bailey that his request had been received. (*Id.*)

On December 14, 2021, Harris visited Bailey in segregation. (ECF No. 57-5, PageID.443.) Harris noted that Bailey's mental status appeared to be within normal limits, and that there was no evidence of emergent symptoms. But Harris also documented Bailey's reports of "hearing voices." (*Id.*) Harris noted that Bailey had "never presented where [auditory hallucinations] or any psychosis was indicated." Instead, Bailey had been treated for depression and substance abuse issues. Harris noted that Bailey's current mood issues may be related to his substance abuse issues. (*Id.*)

Despite his reports of auditory hallucinations during the December 14, 2021 visit, it appears that all returned to normal, with Bailey reporting no additional

mental health concerns during his visits with QMHP Harris on December 20, 2021, December 28, 2021, January 5, 2022, and January 11, 2022.  (*Id.*, PageID.444-447.)

NP Boudreau evaluated Bailey on January 12, 2022.  (*Id.*, PageID.448.) During that evaluation, Bailey admitted that his issues with fighting at MBP, and his general instability in terms of mood and mental status, were due to his history of substance use.  (*Id.*) Boudreau noted that Bailey had been referred to the Medications for Addiction Treatment Program.  Boudreau also noted that a referral report dated April 2, 2019, reflected that Bailey often exaggerates his symptoms.  (*Id.*)  Boudreau ultimately diagnosed Bailey with generalized anxiety disorder, other specified depressive disorder, unspecified alcohol-related disorder, unspecified cannabis-related disorder, and unspecified personality disorder.  Boudreau renewed Bailey's prescription for Remeron.  (*Id.*, PageID.449.)

QMHP Harris visited Bailey in segregation again on January 21, 2022.  (*Id.*, PageID.450.)  Harris and Bailey discussed the changes in Bailey's diagnoses following his January 12, 2022, appointment with NP Boudreau, as well as Medications for Addiction Treatment.  Harris noted that Bailey's appearance and conduct were typical.  Bailey did not report any new mental health concerns.  (*Id.*)

On January 24, 2022, Harris conducted a Medications for Addition Treatment Assessment.  (*Id.*, PageID.451.)  Harris noted that Bailey had symptoms consistent with a severe opioid use disorder.  (*Id.*, PageID.451-452.)  Bailey reported past use of heroin, methamphetamine, and cocaine.  (*Id.*, PageID.452.)

Harris visited Bailey again on January 26, 2022, February 2, 2022, February 9, 2022, February 17, 2022, February 24, 2022, and March 1, 2022.[3]  (*Id.*, PageID.455-461.)  During the February 9, 2022, visit, Bailey began to express his frustrations with the duration of his stay in segregation.  (*Id.*, PageID.457.)  But during the February 17, 2022, visit, Harris noted that Bailey had recently assaulted a staff member.  (*Id.*, PageID.459.)  During the February 24, 2022, visit, Bailey again expressed that he was hearing voices, but Harris noted that "other than his self-report, there is a lack of evidence to support this phenomenon."  (*Id.*, PageID.460.)  On March 1, 2022, Harris and Bailey discussed the fact that Bailey had spoken to police and would likely be charged with assault.  (*Id.*, PageID.461.)  Bailey did not report any other mental health concerns.  (*Id.*)

On March 2, 2022, Bailey filed this lawsuit.

## IV.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[3]    On February 22, 2022, Bailey was visited by a non-defendant provider.  (ECF No. 55-1, PageID.351.)

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.    Analysis

Bailey avers that Defendants QMHP Harris and NP Boudreau acted with deliberate indifference to his serious mental health needs when they failed to address his complaints of auditory hallucinations. (ECF No. 1, PageID.4.)  He further avers that Defendant Harris acted with deliberate indifference to his serious mental health needs by keeping him in segregation for an inordinate amount of time.  (*Id.*)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  It obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  This includes a prisoner's serious psychological needs, "especially when they result in suicidal tendencies." *Comstock*, 273 F.3d at 703 (quoting *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).  A claim for the deprivation of

adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

To succeed on a claim of deliberate indifference, a prisoner who has received medical attention "must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting A*lspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  And the prisoner must place medical evidence into the record verifying the detrimental effect of the inadequate treatment.  *See Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (establishing that a

prisoner must submit verifying medical evidence to support a deliberate indifference claim based on treatment delay); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004) (reiterating that a prisoner must submit verifying medical evidence to support a deliberate indifference claim based on inadequate treatment).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). There, the court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

12

But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "consciously expos[ed] the patient to an excessive risk of serious harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

As an initial matter, there is no question that Bailey received prompt and continuous mental health care from the time he arrived at MBP to the time he filed this lawsuit. (*See* ECF Nos. 55-1, 57-5.) Bailey's mental health records demonstrate that he was seen on a weekly basis, usually by Defendant QMHP Harris. (*See, e.g.*, ECF No. 57-5, PageID.425-427, 431-438, 443-447.) During those visits, Harris took note of Bailey's outward appearance as well as his subjective complaints. (*Id.*) When Bailey noted his desire to participate in a new program, or to change his medication, Harris dutifully documented those requests. (*Id.*, PageID.427; ECF No. 55-1, PageID.318, 332.) And NP Boudreau clearly considered those requests, increasing or otherwise altering Bailey's psychiatric medication on numerous occasions in an effort to best address Bailey's symptoms. (ECF No. 57-5, PageID.428, 448-449.) Furthermore, Bailey's medical records reflect that Defendants considered his

13

complaints of hallucinations, though they did note that Bailey's subjective complaints were inconsistent with his diagnoses and past symptoms.  (*Id.*, PageID.443.)

Because it is clear that Harris and Boudreau provided Bailey with continuous mental health care, Defendants are correct in asserting that to establish the objective component of his claims, Bailey had to demonstrate that the care was "woefully inadequate" and had a "detrimental impact" on Bailey's wellbeing.  In the undersigned's opinion, Bailey has not made these demonstrations.

On March 1, 2022, the day before this Court received Bailey's complaint, QMHP Harris visited Bailey in segregation.  (*Id.*, PageID.461.)  Harris noted that Bailey's mental status appeared in his normal limits, that there was "no other evidence of emergent symptoms" and that Bailey was not suicidal.  Harris also noted that Bailey was taking his medication and managing his conduct.  Bailey did not report additional mental health concerns.  (*Id.*)  Simply put, the record is devoid of evidence that Bailey experienced a deterioration in his mental health as a result of the treatment he received from QMHP Harris and NP Boudreau.  But even if Bailey experienced such deterioration, the undersigned would recommend that the Court dismiss his case based on the subjective component of his deliberate indifference claims.

As set forth above, a plaintiff alleging claims of deliberate indifference must establish that each defendant acted with a mental state "equivalent to criminal recklessness."  The continuous nature of the care that Harris and Boudreau provided Bailey, and the fact that they considered Bailey's complaints and at times adjusted

his treatment according to those complaints, undermines any assertion that they acted with "criminal recklessness."  By all indications on the record, Defendants acted with due care, even accepting that they were skeptical of Bailey's subjective complaints of auditory hallucinations.  To find otherwise, this Court would have to second-guess Defendants' medical judgments, a task that courts do not undertake in the context of a deliberate indifference claim.

As a final matter, the undersigned briefly addresses Bailey's claim that Harris kept him in segregation for an excessive amount of time, in deliberate indifference to his serious mental health needs.  The evidence on the record with respect to his claim is that QMHP Harris was not involved in Bailey's classification to administrative segregation.  Bailey was placed in administrative segregation after a series of prison fights and a staff assault. (*See* ECF No. 57-9, PageID.486-494 (Misconduct Reports); ECF No. 57-10, PageID.496-498 (Security Reclassification Notices).)  At one point, Bailey even requested to stay in administrative segregation for fear that he would be attacked by other inmates in general population.  (ECF No. 57-11, PageID.500 (January 20, 2022, Protection Request).)  And Bailey was placed in administrative segregation by non-defendant MBP staff.  (ECF No. 57-2, PageID.399-400 (Harris Aff.).)  Harris's only duty was to provide Bailey with adequate mental health care during his time in segregation.

In sum, it is the undersigned's opinion that there are no genuine issues of material fact, and that Defendants have established that they did not act with deliberate indifference to Bailey's serious mental health needs during the relevant

time period.  Instead, Defendants provided Bailey with prompt and continuous mental health care at MBP.

## VI.    Qualified and Sovereign Immunity (Defendant Harris)

QMHP Harris concludes his motion for summary judgment by asserting that he is entitled to qualified immunity in his personal capacity, and sovereign immunity in his official capacity.  (ECF No. 57, PageID.393-394.)

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As explained by the Court in *Pearson v. Callahan*, a qualified immunity analysis involves two determinations: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c) or shown (see Rules 50, 56) make out a violation of a constitutional right," and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court may make these determinations in either order.  *Id.* at 236.

Harris's argument for qualified immunity is largely redundant.  After initially arguing that he is entitled to judgment because he did not violate Bailey's Eighth Amendment rights, he argues that he is entitled to qualified immunity because he did not violate Harris's Eighth Amendment rights.  In other words, Harris does not

16

contend that the rights at issue were not clearly established at the time of his alleged misconduct.  In any event, the undersigned agrees; because it is the undersigned's opinion that there are no genuine issues of material fact and that Harris did not violate Bailey's Eighth Amendment rights, it is the undersigned's opinion that Harris is entitled to qualified immunity.

Harris's claim for sovereign immunity is different.  Harris argues that as a state official, he is entitled to sovereign immunity in his official capacity as to Bailey's claims for monetary damages regardless of the merits of Bailey's claims.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Bailey sues Harris in his official and individual capacities for monetary damages.  (ECF No. 1, PageID.2, 6.)  As such, it is the undersigned's opinion that Harris is entitled to sovereign immunity in his official capacity in accordance with the Eleventh Amendment.

## VII.    Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment. (ECF Nos. 55, 56.)  In the undersigned's opinion, there are no genuine issues of material fact, and Bailey's mental health records reflect that Bailey was provided continuous care, not that he was met with deliberate indifference to his serious mental health needs.  Furthermore, the evidence on the record establishes that Defendant Harris had no personal involvement in Bailey's assignment to administrative segregation.

If the Court accepts this recommendation, this case will be dismissed.


Dated:   December 5, 2023                                    /s/ *Maarten Vermaat*
                                                                    MAARTEN VERMAAT
                                                                    U. S. MAGISTRATE JUDGE



### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C) Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).